IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

ELKHORN VALLEY TRUCKS, LLC,

                    Plaintiff,                                      **8:24CV339**

          vs.

UNITED STATES OF AMERICA,                       **MEMORANDUM AND ORDER**
**REGARDING DEFENDANT'S MOTION**
                    Defendant.                          **FOR PARTIAL DISMISSAL**

          In this case, plaintiff Elkhorn Valley Trucks, LLC, (EVT) is a Nebraska-based parts store

that sells certain truck kits to be reassembled into a completed truck. Filing 1 at 2 (¶ 6), 4 (¶ 15).

EVT is suing the United States pursuant to 26 U.S.C. § 7422(f)(1) for actions taken through its

officials or agencies, including the Internal Revenue Service (IRS). Filing 1 at 1–2 (¶ 3). EVT

alleges that the IRS erroneously assessed excise taxes, pursuant to 26 U.S.C. §§ 4051 and 4052,

on EVT's sale of the truck kits in question for each of fifteen quarters in 2016, 2017, 2018, and

2019. Filing 1 at 8 (¶ 38). EVT seeks a refund of excise taxes paid and abatement of excise taxes

assessed on theories that it was not a "manufacturer," so that it is not liable for the tax (Count I);

it qualifies for the "safe harbor" exception to such taxes (Count II); Defendant is equitably

estopped to assess such taxes (Count III); and any nonpayment was due to "reasonable cause"

and not willful negligence, so penalties are not appropriate (Count IV). Filing 1 at 11–23. This

case is now before the Court on Defendant's Motion to Dismiss pursuant to Federal Rules of

Civil Procedure 12(b)(1) and 12(b)(6) as to Counts II, III, and IV of EVT's Complaint and the

part of Count I that seeks abatement of unpaid taxes, interest, and penalties. Filing 13. Defendant

does not seek dismissal of EVT's refund claim in Count I, so this case will proceed on that claim

even if Defendant's Motion is granted.

1

This case arises because EVT did not pay excise taxes as a manufacturer of semi-trucks from 2016 through 2019. EVT claims that the reason it did not pay the taxes for these years is that it relied on a decision made by the IRS not to collect excise taxes in the tax year 2014, and given that decision, EVT believed that the IRS had determined that the taxes were not due under EVT's business model of purchasing truck kits for others to be assembled by a third-party fabricator.

Although EVT made partial payment of excises taxes (the taxes due for one truck for each tax period) EVT's partial payment does not establish subject-matter jurisdiction over EVT's abatement claims for unpaid taxes. Instead, partial payment allows EVT to "sue for a refund for that transaction, and have the outcome of this suit determine [its] liability *for all the other, similar transactions*." *Diversified Grp. Inc. v. United States*, 841 F.3d 975, 982 (Fed. Cir. 2016) (emphasis in the original). In other words, the taxpayer's claim over which the Court has jurisdiction in the first instance is a taxpayer's claim for a "refund" on one "test case," not a taxpayer's claim for abatement of assessed but unpaid taxes. *Id.* at 981. In addition, EVT's claims for abatement of unpaid taxes and penalties plainly seek to restrain the collection of the unpaid taxes and penalties, contrary to the Anti-Injunction Act (AIA), and seek a declaration "with respect to Federal taxes," contrary to the Declaratory Judgment Act (DJA), so that this Court lacks subject-matter jurisdiction over such claims. *See Latch v. United States*, 842 F.2d 1031, 1033 (9th Cir. 1988); *Pagonis v. United States*, 575 F.3d 809, 813 (8th Cir. 2009). These determinations require dismissal of all abatement claims in Counts I through IV.

In order to challenge the IRS's position with regard to the excise taxes from 2016 through 2019, EVT was required to follow a specific administrative appeal procedure before filing a lawsuit in this court. *See* 26 U.S.C. § 7422. EVT failed to follow the required procedure as to its

"reasonable cause" defense in support of its claim for abatement of penalties because that defense was "neither specifically raised by, nor included within the general language of, [EVT's] [administrative] claim for a refund." *IA 80 Grp., Inc. & Subsidiaries v. United States*, 347 F.3d 1067, 1074 (8th Cir. 2003) (quoting *First National Bank of Fayetteville v. United States*, 727 F.2d 741, 744 (8th Cir. 1984)). Therefore, Count IV is also dismissed on this ground. On the other hand, the Court concludes that EVT did adequately raise its "safe harbor" defense to the excises taxes now set out in Count II in its arguments to the IRS during the tax examination for the 2016 to 2019 tax periods. Therefore, Defendant's Motion to Dismiss is denied as to Count II, and Count II—like Count I—remains pending before the Court.

Lastly, as to EVT's estoppel claim in Count III, under clear federal law, an IRS determination as to whether a tax is due in one tax year does not give a taxpayer the right to rely upon that determination for tax treatment in subsequent years. *Hawkins v. Comm'r*, 713 F.2d 347, 351–52 (8th Cir. 1983). Indeed, the law clearly gives the IRS the right to change its mind as to tax treatment from one tax period to the next, and the IRS apparently did so here.

For these and other reasons stated in more detail below, Defendant's Motion to Dismiss is granted as to all claims for abatement in Counts I through IV, the estoppel claim in Count III, and the "reasonable cause" defense to penalties in Count IV, but denied as to the "safe harbor" defense claim in Count II. Thus, this case will proceed only on EVT's refund claim in Count I and its "safe harbor" defense in Count II.

## I.  INTRODUCTION

### A.  A Brief Primer on Applicable Excise Tax Law

The Court finds that the disposition of Defendant's Motion to Dismiss does not turn on the interpretation or application of the pertinent excise tax law. Nevertheless, a summary of

pertinent excise tax law will help put in context the facts in the case. Thus, the Court begins with such a summary.

The Internal Revenue Code imposes an excise tax on heavy trucks and trailers sold at retail, in pertinent part, as follows:

> **(a) Imposition of tax.**--
>
>> **(1) In general.**--There is hereby imposed on the first retail sale of the following articles (including in each case parts or accessories sold on or in connection therewith or with the sale thereof) a tax of 12 percent of the amount for which the article is so sold:
>>
>>> **(A)** Automobile truck chassis.
>>>
>>> **(B)** Automobile truck bodies.
>>>
>>> * * *
>>>
>>> **(E)** Tractors of the kind chiefly used for highway transportation in combination with a trailer or semitrailer.

26 U.S.C. § 4051(a)(1). The Code provides further that in general, "The term 'first retail sale' means the first sale, for a purpose other than for resale or leasing in a long-term lease, after production, manufacture, or importation." 26 U.S.C. § 4052(a)(1). The Code then identifies circumstances in which "use" is treated as a "sale" for purposes of the "first retail sale" requirement. 26 U.S.C. § 4052(a)(3). As pertinent here, the Code provides, "If any person uses an article taxable under section 4051 before the first retail sale of such article, then such person shall be liable for tax under section 4051 in the same manner as if such article were sold at retail by him." 26 U.S.C. § 4052(a)(3)(A).

Although the Code provisions cited above state when the excise tax is "imposed" or when a person becomes "liable" for the tax, an applicable Treasury Regulation defines when "attachment of [the] tax" occurs. *See* 26 C.F.R. § 48.0-2. Specifically, for present purposes, the regulation provides, "In the case of use by the manufacturer, the tax attaches at the time the use

4

begins." 26 C.F.R. § 48.0-2(b)(6); *see also* 26 U.S.C. § 4052(a)(3)(A) (discussing liability for the tax based on "use" by a "person"). The Treasury Regulation also states,

> The term manufacturer includes any person who produces a taxable article from scrap, salvage, or junk material, or from new or raw material, by processing, manipulating, or changing the form of an article or by combining or assembling two or more articles.

26 C.F.R. § 48.0-2(b)(4)(i). Whether someone is a "manufacturer" may also depend upon who has title to the materials and the finished article rather than who assembles the finished article, as follows:

> [W]here a person manufactures or produces a taxable article for another person who furnishes materials under an agreement whereby the person who furnished the materials retains title thereto and to the finished article, the person for whom the taxable article is manufactured or produced, and not the person who actually manufactures or produces it, will be considered the manufacturer.

26 C.F.R. § 48.0-2(a)(4)(ii).

The Code also defines what the Seventh Circuit Court of Appeals called a "safe harbor" to avoid paying the excise tax in 26 U.S.C. § 4052(f). *See Schneider Nat'l Leasing, Inc. v. United States*, 11 F.4th 548, 549–50 (7th Cir. 2021). The "safe harbor" provision states,

> An article described in section 4051(a)(1) shall not be treated as manufactured or produced solely by reason of repairs or modifications to the article (including any modification which changes the transportation function of the article or restores a wrecked article to a functional condition) if the cost of such repairs and modifications does not exceed 75 percent of the retail price of a comparable new article.

26 U.S.C. § 4052(f)(1); *see also* 26 U.S.C. § 4052(f)(2) (stating an exception to the "safe harbor" not applicable here).

With this brief primer on the applicable excise tax as background, the Court turns to the factual background of this case.

## B. Factual Background

Defendant's Motion to Dismiss is premised on both a "facial" attack on subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and an attack on statement of a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In either a "facial" attack on subject-matter jurisdiction or an attack on statement of a claim, a court must look only at the pleadings and provide the same protections available under Federal Rule of Civil Procedure 12(b)(6). *See Smith v. UnitedHealth Grp. Inc.*, 106 F.4th 809, 813 (8th Cir. 2024) (stating standards for a "facial" challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1)); *Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (stating standards for failure to state a claim pursuant to Rule 12(b)(6)). Thus, the Court considers the following allegations as true—to the extent that they are nonconclusory—for the purposes of ruling on this Motion. *See Bauer*, 25 F.4th at 589 (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). Following Eighth Circuit precedent, the Court also considers "materials 'necessarily embraced by the pleadings.'" *LeMay v. Mays*, 18 F.4th 283, 289 (8th Cir. 2021) (quoting *Buckley v. Hennepin Cnty.*, 9 F.4th 757, 760 (8th Cir. 2021), in turn quoting *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015)).

### 1. EVT's Business

EVT is a Nebraska-based parts store that sells "gliders" and "truck parts," including "glider kits" and restored "power train components." Filing 1 at 2 (¶ 6). Somewhat more specifically, EVT explains,

> 7. A "glider" is a worn or wrecked highway tractor that has been refurbished using an assemblage of new tractor parts known as a "glider kit," which typically consists of, among other things, a cab, frame, sheet metal, mounting brackets, steering gear, front axle, front wheels and front tires and, in some cases, a rear axle.

6

8.    "Truck parts" are worn or wrecked "power train components" that have been refurbished which typically consist of, among other things, an engine, transmission, driveshaft, axles, and differential.

Filing 1 at 3 (¶¶ 7–8).

Customers solicit EVT to locate customized glider kits and truck parts, which EVT sources from Fitzgerald Peterbilt I, LLC, and Kenworth Motors Company as subsidiaries of the manufacturer of the glider kits, PACCAR, Inc. Filing 1 at 3 (¶¶ 9–10). Customers "typically" submit a deposit and enter into a sales agreement with EVT, then EVT places their orders for the custom glider kit and truck parts as directed by the customer. Filing 1 at 3 (¶ 11). However, EVT entered into a Bailment Agreement, a copy of which is attached to the Complaint as Exhibit A, Filing 1-1, with Fitzgerald Peterbilt I, LLC, "and [EVT] does not possess title or have ownership of the glider kits customers purchase through Fitzgerald Peterbilt I, LLC." Filing 1 at 3 (¶ 12). EVT does not allege a similar bailment agreement with Kenworth Motors Company. *See generally* Filing 1.

At the direction of the customer, EVT organizes delivery of the glider kit and truck parts to a third-party fabricator. Filing 1 at 4 (¶ 13). According to EVT, ownership of the glider kit and truck parts passes to the customer upon delivery of the glider kit and truck parts to the third-party fabricator. Filing 1 at 4 (¶ 14). The third-party fabricator assembles the customer's glider kit and truck parts into a completed truck. Filing 1 at 4 (¶ 15). The customer retains ownership or title to the glider kit and truck parts during assembly of the glider kit and truck parts into a completed truck by the third-party fabricator. Filing 1 at 4 (¶ 16). Customers receive separate invoices for the services provided by EVT and the third-party fabricator and the customer pays EVT and the third-party fabricator separately. Filing 1 at 4 (¶ 17). EVT also provides a statement, which the customer signs, notifying the customer that EVT has not paid any federal excise tax on the glider kit and truck parts because EVT is a glider kit and truck parts dealer and further stating that it is

the customer's responsibility as the "manufacturer" to make payment of federal excise tax. Filing 1 at 5 (¶ 20).

When EVT receives payment from a customer, EVT requests a Manufacturer Certificate of Origin/Manufacturer Statement of Origin (MCO/MSO) on behalf of the customer from Fitzgerald Peterbilt I, LLC, or Kenworth Motors Company, which EVT signs over to the customer. Filing 1 at 4 (¶ 18). EVT explains,

> 19    An MCO/MSO is a document certifying the country of origin of new merchandise required by certain foreign countries for tariff purposes and is a document that is required to register the Truck the customer is manufacturing with the appropriate Department of Motor Vehicles ("DMV").

Filing 1 at 4 (¶ 19). After the third-party fabricator finishes assembling the glider kit and truck parts into a completed truck, the customer submits the truck to the appropriate DMV for inspection along with the MCO/MSO of the glider kit and either a notarized bill of sale for the truck parts or an affidavit from the third-party fabricator. Filing 1 at 5 (¶ 21). After the inspection and review of the documents provided, the DMV will issue a certificate of title for the completed truck to the customer, who may then begin to use the truck on the highway. Filing 1 at 5 (¶¶ 22–23).

### 2.    *Federal Excise Tax Examinations*

EVT has been the subject of two separate excise tax examinations by the IRS. Filing 1 at 7 (¶ 32). The different outcomes of the two examinations are the basis for EVT's claims in this case.

#### a.   The First Examination

The first examination was in 2015 and covered the period between September 1, 2014, and December 31, 2014, during which EVT had not collected excise tax on sales of glider kits and truck parts. Filing 1 at 7 (¶ 33). Following that first examination, EVT alleges that "the IRS

determined that no Excise Taxes were due under [EVT's] business model." Filing 1 at 7 (¶ 34).
EVT alleges that it did not collect excise taxes from customers on sales of glider kits and truck
parts after the first IRS examination "[i]n reliance upon the results of the IRS['s] [first]
examination and the IRS's published guidance contained in Treas. Reg. § 48.0-2(a)(4)(ii) and
Chief Counsel Advice Memorandum 201403014." Filing 1 at 7–8 (¶ 35). Treasury Regulation
48.0-2(a)(4)(ii) was quoted above in § I.A. *See* 26 C.F.R. § 48.0-2(a)(4)(ii). Chief Counsel
Advice Memorandum 201403014 is not in the record, and EVT nowhere identifies in its
Complaint the statements in that Memorandum on which EVT relies. *See generally* Filing 1.
However, the Advice Memorandum is available at https://www.irs.gov/written-determinations.
EVT alleges that following the IRS's first examination, the IRS attempted to collect and
collected excise taxes from EVT's customers. Filing 1 at 8 (¶ 36).

> b.  The Second Examination

The IRS conducted a second examination for the quarters ending in 2016, 2017, 2018,
and 2019. Filing 1 at 8 (¶ 37). EVT did not collect excise taxes on its sales of glider kits and
truck parts during those periods. Filing 1 at 8 (¶ 37). EVT alleges that it did not do so in reliance
upon the prior determination that no excise taxes were due under EVT's business model. Filing 1
at 8 (¶ 37). However, after concluding the second IRS examination, the IRS assessed excise taxes
on April 1, 2022, and May 9, 2022, for each of the fifteen periods from the quarter that ended
March 31, 2016, through the quarter that ended September 30, 2019. Filing 1 at 8 (¶ 38). EVT
does not set out or allege the IRS's reasoning for its differing conclusions between the first
examination and the second examination and does not include with its Complaint a document or
documents conveying the IRS's assessment of excises taxes on April 1, 2022, and May 9, 2022,
after the second examination. *See generally* Filing 1.

### 3.    EVT's Response to the Second IRS Examination

EVT alleges that the IRS erroneously assessed excise taxes on April 1, 2022, and May 9, 2022, pursuant to 26 U.S.C. §§ 4051 and 4052, on EVT's sale of glider kits and truck parts for each of the fifteen quarters from the quarter that ended March 31, 2016, through the quarter that ended September 30, 2019. Filing 1 at 8 (¶ 38). EVT calls the period from the quarter that ended March 31, 2016, through the quarter that ended September 20, 2019, the Tax Period. Filing 1 at 8 (¶ 38). The IRS's quarterly excise tax assessments from the second IRS examination totaled $5,467,469.38. Filing 1 at 8–9 (¶ 39) (showing the assessment for each quarter and the total assessment). Notwithstanding EVT's assertion that the excise tax assessment was erroneous, on July 14, 2022, EVT paid the additional excise tax assessed for one truck per taxable quarter, totaling $231,783.01. Filing 1 at 9–10 (¶ 40) (showing the VIN, the total sale price, the 4% markup, the excise tax due, and the tax paid for each truck in each quarter, as well as the total paid).

### 4.    EVT's Refund Claim

On or about October 17, 2022, EVT filed a claim with the IRS for a refund of $231,783.01, which is equal to the amounts EVT paid for the excise taxes that the IRS had assessed on one truck per quarter. Filing 1 at 10 (¶ 41); *see also* Filing 1-2 at 5 (refund claim). The pertinent part of EVT's Statement in Support of Refund is the following:

> The Service imposed the Federal excise tax on all sale of all glider kits and remanufactured power train components during the applicable periods. Based on the Revenue Agent Report and statements made by the Appeals Officers at the Appeals Conference, Taxpayer understands the Service's reasoning for imposing the Federal excise tax is that the Taxpayer is the manufacturer of semi-tractor units and retained title throughout the manufacturing process. Further, the Service takes the position that the Taxpayer's sales of glider kits and remanufactured power train components is the first retail sale of a completed semi-tractor unit to their customers.

10

The Taxpayer seeks a refund of the Federal excise tax because the Service has erred in its interpretation and application of the law, including its own published guidance.

1.    Taxpayer is not the manufacturer because Taxpayer's customers retain title and control of the component materials used in assembling a completed semi-tractor unit and the title to the completed semi-tractor itself. The Taxpayer's customers are responsible for the tax imposed under Section 4051, per the rule set forth in Section 4052(a)(3). Taxpayer's customers acknowledged they were the party responsible for the Federal excise tax.

2.    The safe harbor provision in Section 4052(f)(1) does not apply to Taxpayer. The focus of any application of Section 405[2](f)[1] must be to a semi-tractor unit that was previously taxed. Thus, because the assembling of the semi-tractor units by Taxpayer's customer, the purview of Rev. Rul. 91-27 applies to Taxpayer's customers.

Filing 1-2 at 6. EVT alleges that the refund claim was timely pursuant to 26 U.S.C. § 6511(a).

Filing 1 at 10 (¶ 42).

On or about March 11, 2024, the IRS issued a notice of disallowance of EVT's refund claim. Filing 1 at 10 (¶ 44); *see also* Filing 1-3 (IRS Notice). In pertinent part, the IRS's Notice states the following:

**NO CONSIDERATION**

We are sorry but we cannot consider your request for audit reconsideration, received on Oct. 20, 2022. It does not appear that you have provided any additional information that has not been considered previously. Therefore, we are denying your claim for refund.

Filing 1-3 at 6.

This lawsuit followed.

---

[1] EVT identified this provision as "Section 4051(f)" in its Statement in Support of Refund. Filing 1-2 at 6. However, there is no subsection (f) to 26 U.S.C. § 4051. The "safe harbor" provision is 26 U.S.C. § 4052(f)(1). Thus, it is apparent that EVT meant to refer to 26 U.S.C. § 4052(f), as cited in the preceding sentence. Filing 1-2 at 6.

### C. Procedural Background

*1.    EVT's Lawsuit*

EVT filed this lawsuit on August 30, 2024. Filing 1. EVT alleges that its lawsuit is timely because less than two years have passed since the IRS mailed the notice of disallowance on EVT's refund claim. Filing 1 at 11 (¶ 45) (citing 26 U.S.C. § 6532(a)). EVT seeks relief on four Counts. Filing 1 at 11–22.

In Count I, EVT asserts that it is not the "manufacturer" of the trucks, so it is not liable for excise tax. Filing 1 at 11. The gravamen of this claim appears to be the following:

> 47.    The IRS erroneously assessed Elkhorn Valley Excises Taxes under Code § 4051 for the Tax Period based on a flawed theory arising out of the erroneous conclusion that Elkhorn Valley is the manufacturer of refabricated Trucks because Elkhorn Valley holds title to the glider kits.
>
> * * *
>
> 50.    The IRS erred in its interpretation and application of applicable law, and its own published guidance. In particular, the IRS has treated Elkhorn Valley in a manner that directly contradicts the published guidance contained in Treas. Reg. §48.0-2(a)(4)(ii) and Chief Counsel Advice Memorandum 201403014, Situation 4.

Filing 1 at 11 (¶ 47), 12 (¶ 50). Again, Defendant does not challenge this "refund" claim in its Motion to Dismiss.

On the other hand, Defendant does challenge the "safe harbor" defense to the excise taxes asserted in Count II. In Count II, EVT alleges "In the Alternative and Hypothetical[ly]" that it qualifies for the "safe harbor" exception to the excise tax. Filing 1 at 14. The gravamen of this claim appears to be the following:

> 63.    The IRS erroneously assessed Elkhorn Valley Excises Taxes under Code § 4051 for the Tax Period based on a flawed theory arising out of the erroneous conclusion that Elkhorn Valley does not qualify for the Safe Harbor because the same identifiable article must exist before and after the repairs or modifications.

64. Alternatively and hypothetically, if Elkhorn Valley is the manufacturer of the completed Truck, the IRS erred in its interpretation and application of the applicable tax law, and its own published guidance. In particular, the IRS has treated Elkhorn Valley in a manner that directly contradicts the published guidance contained in Rev. Ruling 91-27.

* * *

66. If Elkhorn Valley is the manufacturer of the Trucks then Elkhorn Valley is permitted to use the Safe Harbor to determine its Excise Tax liability for the refurbishment of the Trucks.

67. If Defendant correctly applies the Safe Harbor, Elkhorn Valley would not have any taxable sales of refurbished Trucks because the costs Elkhorn Valley incurred to refurbish the Trucks were below the applicable threshold amounts.

Filing 1 at 14 (¶¶ 63–64), 15 (¶¶ 66–67).

In Count III, EVT asserts a claim of "equitable estoppel based on prior IRS examination, rulings, guidance, and efforts to collect from customers." Filing 1 at 16 (reduced from all capitals). In essence, EVT alleges that its business model and process have not changed since the first IRS audit, which induced EVT's reliance, but that the IRS subsequently reversed its position. Filing 1 at 17 (¶¶ 78–80, 82). The Court will set out EVT's specific allegations in support of its estoppel claim in Count III below when and if it turns to the question of whether that Count states a claim.

Finally, in Count IV, EVT alleges its "nonpayment of excise taxes was due to reasonable cause and not due to willful neglect," so that it is not subject to penalties for late payment. Filing 1 at 19 (reduced from all capitals). In essence, this Count alleges the following:

94. Elkhorn Valley exercised ordinary business care and prudence because it reasonably relied to its detriment on results from the first IRS examination, IRS rulings, other published guidance, and the efforts of the IRS to collect Excise Tax from its customers.

Filing 1 at 21 (¶ 94). Consequently, EVT alleges that it "should not bear responsibility for penalties assessed against [it]." Filing 1 at 21 (¶ 96).

13

EVT seeks identical relief on all four of its Counts: EVT asks the Court to order Defendant "to abate all erroneously assessed Excise Taxes for the Tax Periods at issue, award Elkhorn Valley a refund totaling $231,783.01, plus statutory interest as provided by law, together with costs of this suit and attorney's fees pursuant to Code § 7430" and any other appropriate relief. Filing 1 at 13 (Count I, WHEREFORE clause), 15–16 (Count II, WHEREFORE clause), 18–19 (Count III, WHEREFORE clause), 22 (Count IV, WHEREFORE clause).

### 2. *Defendant's Motion to Dismiss*

Defendant's Motion to Dismiss followed in due course on December 19, 2024. Filing 13. Defendant asserts that EVT's requests for abatement of unpaid federal excise taxes, penalties, and interest in all Counts seek declaratory or injunctive relief against the IRS for which courts have no jurisdiction, so those claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). Filing 14 at 3. Defendant makes clear that it "does not seek dismissal of Count I in this motion except to the extent that it seeks an abatement of unpaid taxes, penalties, and interest, since abatement is not available as relief in federal district court." Filing 14 at 3 n.1. In other words, Defendant does not challenge Count I to the extent that it asserts a refund claim. Defendant seeks dismissal of Counts II and IV pursuant to Federal Rule of Civil Procedure 12(b)(1) because Elkhorn Valley failed to pursue the administrative claim process as to the "safe harbor" defense in Count II and the "reasonable cause" defense to penalties in Count IV before filing this suit, as required under 26 U.S.C. § 7422(a). Filing 14 at 3. Thus, Defendant asserts that EVT cannot meet its burden to show that the United States waived its sovereign immunity with respect to those defenses. Filing 14 at 3. Defendant argues that Count III should be dismissed under Federal Rule of Civil Procedure 12(b)(6), because the complaint has not alleged sufficient facts to establish an estoppel claim. Filing 14 at 3. Defendant also asserts, in the alternative, that

Counts III and IV should be dismissed under Federal Rule of Civil Procedure 12(b)(6), because the complaint has not alleged sufficient facts to state a refund claim. Filing 14 at 3.

The Motion to Dismiss is now fully submitted. The Court will begin its consideration of Defendant's Motion to Dismiss with the challenges to the Court's subject-matter jurisdiction over all or parts of Counts I, II, III, and IV, then the Court will consider the challenges to Counts III and IV based on failure to state claims.

## II. The Challenges to Subject Matter Jurisdiction

The Court begins its consideration of Defendant's challenge to subject-matter jurisdiction over certain claims or parts of claims with a summary of the standards for a Rule 12(b)(1) motion to dismiss.

### A. Rule 12(b)(1) Standards

Federal Rule of Civil Procedure 12(b)(1) provides for a pre-answer motion to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "The plaintiff bears the burden of establishing subject matter jurisdiction." Hilger v. United States, 87 F.4th 897, 899 (8th Cir. 2023) (citing Herden v. United States, 726 F.3d 1042, 1046 (8th Cir. 2013) (en banc)). "When considering a motion under Rule 12(b)(1), a court is to consider whether a party is asserting a 'facial attack' or a 'factual attack' on jurisdiction." Smith v. UnitedHealth Grp. Inc., 106 F.4th 809, 813 (8th Cir. 2024) (citing Carlsen v. GameStop, Inc., 833 F.3d 903, 908 (8th Cir. 2016)). "The method in which the district court resolves a Rule 12(b)(1) motion . . . obliges [the Circuit Court of Appeals] to follow the same approach." Animal Legal Def. Fund v. Reynolds, 89 F.4th 1071, 1077 (8th Cir. 2024) (quoting Carlsen, 833 F.3d at 908).

"If [a Rule 12(b)(1) motion] is a facial attack, the court looks only at the pleadings and gives the non-moving party the same protections available under Rule 12(b)(6)." Smith, 106 F.4th at 813. The Rule 12(b)(6) "protections" or "safeguards" require the Court to "accept 'the

15

facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'" *Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). However, on a "facial" challenge, the Court "can consider documents 'necessarily embraced by the complaint,' including 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.'" *Rossi v. Arch Ins. Co.*, 60 F.4th 1189, 1193 (8th Cir. 2023) (quoting *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017)). In contrast,

> "When the moving party makes a factual attack on the court's subject-matter jurisdiction, ... the district court may look outside the pleadings and weigh evidence." *Two Eagle [v. United States]*, 57 F.4th [616,] 620 [(8th Cir. 2023)]. "We review the district court's resolution of factual disputes for clear error and its decision on whether it lacks subject-matter jurisdiction de novo." *Id.*

*Hilger*, 87 F.4th at 899.

In this case, Defendant states that it "makes a facial attack on jurisdiction, and the Court may resolve this motion and dismiss this complaint under Rule 12(b)(1) without resorting to any evidence beyond the complaint." Filing 15 at 4. The Court finds no reason to depart from the requirements of a "facial" challenge to subject-matter jurisdiction in this case, so it will apply Rule 12(b)(6) protections or safeguards. *Smith*, 106 F.4th at 813; *Bauer*, 25 F.4th at 589. Even so, the Court may still consider matters embraced by the Complaint. *Rossi*, 60 F.4th at 1193.

Defendant argues that EVT's requests for abatement violate "the *Flora* full-payment rule," the doctrine of variance, the Anti-Injunction Act (AIA), the Declaratory Judgment Act (DJA), and sovereign immunity. Filing 14 at 9. As such, Defendant argues that the Court has no jurisdiction over EVT's requests for abatement and all EVT's abatement claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). Filing 14 at 9. The Court will

16

consider each of these challenges to subject-matter jurisdiction to the extent the Court finds them dispositive.

### B. The Bars to Abatement Claims

#### 1.    The Parties' Arguments

Defendant asserts that EVT has not paid the excise taxes assessed in full, as required by "the *Flora* full-payment rule," so that abatement claims as to those taxes should be dismissed under Rule 12(b)(1) barring any of the abatement claims in Counts I through IV. Filing 14 at 12. Likewise, Defendant contends that EVT failed to file a refund request as to the assessed penalties and failed to pay those penalties, in violation of "the *Flora* full-payment rule," so that the United States has not waived its sovereign immunity as to refund or abatement of any penalties, barring the claim in Count IV. Filing 14 at 9. Defendant acknowledges that the United States has consented to be sued for "erroneously or illegally assessed or collected" taxes, but Defendant argues that taxpayers first must strictly comply with statutory conditions set forth in 26 U.S.C. §§ 7422, 6511, and 6532 to demonstrate a waiver of the sovereign immunity of the United States. Filing 14 at 10. Specifically, Defendant argues, § 7422 permits a suit for refund of an erroneously or illegally assessed or collected tax only after "a claim for refund or credit has been duly filed with the Secretary [of the Treasury]." Filing 14 at 10–11 (quoting 26 U.S.C. § 7422). Defendant argues that a taxpayer has not "duly filed" a claim for a refund in compliance with § 7422 unless the taxpayer has fully paid the disputed sum. Filing 14 at 11. Defendant argues that if a taxpayer challenges an assessment without fully paying it, the taxpayer's suit is typically barred by the "the *Flora* full-payment rule" and by the Anti-Injunction Act (AIA). Filing 14 at 11 (citing *Pagonis v. United States*, 575 F.3d 809, 812–13 (8th Cir. 2009), in turn citing *Flora v. United States,* 362 U.S. 145, 177 (1960)). Defendant points out that EVT admits that it has made payment of excise taxes only for one truck per taxable period. Filing 14 at 12 (citing Filing 1 at

17

9–10 (¶¶ 40–41)). Defendant also argues that EVT's failure to comply with the requirements of § 7422 means that EVT's request for abatement of taxes and penalties violates the Anti-Injunction Act (AIA) and the Declaratory Judgment Act (DJA), which prohibit courts from entertaining suits challenging tax assessments and collection. Filing 18 at 14. Specifically, Defendant argues that EVT generally requests abatement of unpaid federal excise taxes and unpaid penalties, but a claim for abatement is one for declaratory judgment or injunctive relief against the IRS for which courts have no jurisdiction. Filing 14 at 15–16.

EVT counters that the *Flora* full-payment rule has been satisfied precisely because EVT has paid the erroneously assessed excise tax on one truck per quarter in the Tax Period. Filing 18 at 4, 23. EVT argues that a taxpayer must pay the full amount of the assessed tax deficiency unless a tax or penalty is considered "divisible," in which case partial payment is sufficient for jurisdictional purposes. Filing 18 at 24. EVT argues that excise taxes are "divisible." Filing 18 at 24. EVT argues that its payment of part of a divisible tax satisfies the full-payment rule as to both a refund claim and an abatement claim. Filing 18 at 24. EVT also argues that Defendant's AIA and DJA arguments are "irrelevant" because EVT complied with the pay-first requirement to seek a refund. Filing 18 at 23, 31.

In reply, Defendant argues that EVT has not contested that abatement is a form of relief jurisdictionally barred by the AIA and the DJA. Filing 21 at 17. At the same time, Defendant acknowledges that a successful refund suit would cause the IRS not to collect the unpaid taxes and penalties that were assessed in the same transaction. Filing 21 at 17 & n.4. Defendant acknowledges that partial payment of divisible taxes may allow a refund suit for the taxes paid, but they argue that partial payment does not provide subject-matter jurisdiction over a claim for abatement of unpaid taxes and penalties. Filing 21 at 18. Furthermore, Defendant argues that

18

EVT has made no payment of other taxes and penalties before bringing suit, so that there is no jurisdiction over an abatement claim as to those taxes and penalties. Filing 21 at 18.

2. *The Court Lacks Subject Matter Jurisdiction Over Abatement Claims*

a. The *Flora* Pre-Payment Rule Does Not Provide Jurisdiction for an Abatement Claim

The Eighth Circuit Court of Appeals has explained, "Generally, a taxpayer must pay his outstanding tax liability in order to maintain jurisdiction in district court." *Barse v. United States*, 957 F.3d 883, 886 (8th Cir. 2020) (citing 28 U.S.C. § 1346(a)(1) as permitting an action for the "recovery of any internal-revenue tax," and *Flora v. United States*, 362 U.S. 145, 177 (1960), as finding § 1346(a)(1) "requires full payment of the assessment before an income tax refund suit can be maintained in a Federal District Court"). The Eighth Circuit explained this pay-first rule in more detail in a case involving income taxes:

> A taxpayer who has not paid an income tax assessment in full, however, generally may not file suit in district court to challenge the validity of the assessment. If the taxpayer pays part of the assessment and seeks to challenge it through a refund action under § 1346(a)(1), then the suit is barred by the Supreme Court's ruling in *Flora* that full payment of an assessment is a prerequisite to a refund action. 362 U.S. at 177, 80 S.Ct. 630. Alternatively, if the taxpayer challenges the assessment without paying any portion of it, the suit is typically barred by the Internal Revenue Code's Anti–Injunction Act, 26 U.S.C. § 7421(a). Section 7421(a) prohibits any "suit for the purpose of restraining the assessment or collection of any tax" brought by "any person" in "any court". . . .

*Pagonis v. United States*, 575 F.3d 809, 812–13 (8th Cir. 2009) (adding that there are exceptions, but they are not applicable here).

Over three decades ago, the Eighth Circuit Court of Appeals briefly explained an exception to the *Flora* pre-payment rule where taxes are "divisible":

> In *Flora v. United States*, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), *aff'd on rehearing*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960) (*Flora*), the Supreme Court held that full payment of a tax assessment is required prior to bringing suit in federal court; however, assessments, such as excise taxes, which

are "divisible" into a tax on each transaction or event, may be challenged in federal district court by paying only one division. 362 U.S. at 171 n. 37, 175 n.38, 80 S.Ct. at 644 n. 37, 646 n. 38.

Noske v. United States, 911 F.2d 133, 136 (8th Cir. 1990); see also Diversified Grp. Inc. v. United States, 841 F.3d 975, 981 (Fed. Cir. 2016) (explaining the Flora pre-payment rule and the "divisible" tax exception in essentially identical terms).

The Federal Circuit Court of Appeals explicitly defined a "divisible tax" as "one that represents the aggregate of taxes due on multiple transactions (e.g., sales of items subject to excise taxes)." Diversified Grp. Inc., 841 F.3d at 982 n.4 (quoting Rocovich v. United States, 933 F.2d 991, 995 (Fed. Cir. 1991)). As to the "divisibility exception," that court explained,

> If an assessment or penalty is merely "the sum of several independent assessments triggered by separate transactions," Korobkin v. United States, 988 F.2d 975, 976 (9th Cir. 1993), it is considered "divisible" such that "the taxpayer may pay the full amount on *one transaction*, sue for a refund for that transaction, and have the outcome of this suit determine his liability *for all the other, similar transactions*." Cencast Servs., L.P. v. United States, 729 F.3d 1352, 1366 (Fed. Cir. 2013) (quoting Univ. of Chi. v. United States, 547 F.3d 773, 785 (7th Cir. 2008)). In practice, the government will generally counterclaim for the remainder of the tax due and both the paid assessment and the unpaid assessments will be litigated in one action. Univ. of Chi. 547 F.3d at 785; Ruth v. United States, 823 F.2d 1091, 1093 (7th Cir. 1987); Oral Argument at 12:22–47, available at http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2016-1014.mp3. If the government does not counterclaim, the challenger remains free to litigate the paid assessment as a test case.

Diversified Grp. Inc., 841 F.3d at 981–82 (adding that "divisibility remains a narrow exception" (internal quotation marks and citation omitted)); Korobkin, 988 F.2d at 976 ("The paradigm [of divisible taxes] is excise taxes: If you're assessed $100 for each of a thousand widgets, you can pay $100—the whole tax on one of the widgets—and then go to court.").

EVT admits that it has not made full payment of the taxes or penalties assessed but has only paid the excise tax assessed on one truck per taxable period. Filing 1 at 9–10 (¶¶ 40–41). On the other hand, EVT is correct that excise taxes are "divisible" taxes for purposes of the *Flora*

pre-payment rule. Specifically, an excise tax is "one that represents the aggregate of taxes due on multiple transactions (e.g., sales of items subject to excise taxes)." *Diversified Grp. Inc.*, 841 F.3d at 982 n.4 (quoting *Rocovich v. United States*, 933 F.2d 991, 995 (Fed. Cir. 1991)); *Korobkin*, 988 F.2d at 976 (identifying excises taxes as the "paradigm" of divisible taxes). The penalties are also "divisible." *Id.* at 981–82 ("If an assessment or penalty is merely the sum of several independent assessments triggered by separate transactions, it is considered 'divisible. . . .'" (internal quotation mark and citation omitted)). However, that does not mean that EVT's partial payment of excise taxes establishes subject-matter jurisdiction over EVT's abatement claims.

To the contrary, under the "divisibility exception," what a taxpayer is authorized to do after making a partial payment is to "sue for a refund for that transaction, and have the outcome of this suit determine his liability *for all the other, similar transactions*." *Id.* at 982 (emphasis in the original). "In practice, the government will generally counterclaim for the remainder of the tax due"—that is, the government may assert a counterclaim to recover unpaid taxes over which the court has jurisdiction—and "both the paid assessment and the unpaid assessments will be litigated in one action." *Id.* However, if the government does not assert such a counterclaim— and it has not yet done so in this case—all that the taxpayer can litigate is "the paid assessment as a test case." *Id.* In other words, the taxpayer's claim over which the Court has jurisdiction in the first instance is a taxpayer's claim for a "refund" on one "test case," not a taxpayer's claim for abatement of assessed but unpaid taxes. *Id.* at 981. The outcome of the "test case" may have *res judicata* effect—or as Defendant acknowledges here, a successful refund suit would cause the IRS not to collect the unpaid taxes and penalties that were assessed in the same transaction.

Filing 21 at 17 & n.4. However, that fact does not establish subject-matter jurisdiction over the taxpayer's abatement claim in the first instance.

### b.   An Abatement Claim Violates the AIA and the DJA

The Court lacks subject-matter jurisdiction over EVT's abatement claims for another reason. "The Anti-Injunction Act, 26 U.S.C. § 7421(a), bars any 'suit for the purpose of restraining the assessment or collection of any tax.'" *CIC Servs., LLC v. Internal Revenue Serv.,* 593 U.S. 209, 211 (2021). Similarly, the Declaratory Judgment Act (DJA) permits declaratory relief "except with respect to Federal taxes." 28 U.S.C. § 2201. The Ninth Circuit Court of Appeals has held that a district court clearly lacks jurisdiction over a taxpayer's claim for a tax abatement, which involves the same relief that would be conferred by an injunction or a declaratory judgment. *Latch v. United States,* 842 F.2d 1031, 1033 (9th Cir. 1988); *accord Pagonis,* 575 F.3d at 813 ("[I]f the taxpayer challenges the assessment without paying any portion of it, the suit is typically barred by the Internal Revenue Code's Anti–Injunction Act, 26 U.S.C. § 7421(a)."). The Court concludes that EVT's claims for abatement of unpaid taxes and penalties plainly seek to restrain the collection of the unpaid taxes and penalties, contrary to the AIA, and seek a declaration "with respect to Federal taxes," contrary to the DJA, so that this Court lacks subject-matter jurisdiction over such claims. *See id.*; *Pagonis,* 575 F.3d at 813.

### 3.   Summary

Even affording EVT the protections or safeguards of Rule 12(b)(6), *Smith,* 106 F.4th at 813, EVT has failed to plead a sufficient basis for subject-matter jurisdiction over its abatement claims. *See Hilger,* 87 F.4th at 899. EVT's claims for abatement of taxes and penalties in Counts I, II, III, and IV are dismissed for lack of subject-matter jurisdiction.

### C.  The Variance Doctrine

Defendant asserts a further ground for dismissal of Count II, concerning EVT's "alternative" and "hypothetical" claim that EVT is entitled to the "safe harbor" defense from excise taxes, and Count IV, concerning refund or abatement of penalties, pursuant to Federal Rule of Civil Procedure 12(b)(1). That further ground is that EVT failed to raise these claims before the IRS before filing this suit, as required under 26 U.S.C. § 7422(a). Filing 14 at 2. Thus, Defendant argues that EVT now violates the "variance doctrine" by asserting new claims for which the United States has not waived its sovereign immunity. Filing 14 at 2. The Court will consider separately the two claims that Defendant challenges based on the variance doctrine. However, the Court will first summarize the "variance doctrine" or "substantial variance rule" itself.

### 1.    The Nature of the Variance Doctrine

"Congress has expressly waived sovereign immunity for suits against the United States by taxpayers seeking to recover tax refunds." *Barse v. United States*, 957 F.3d 883, 885 (8th Cir. 2020) (quoting *Kaffenberger v. United States*, 314 F.3d 944, 950 (8th Cir. 2003)). That waiver is not unlimited; rather, it "must be read in conformity with other statutory provisions which qualify a taxpayer's right to bring a refund suit." *Id.* at 885–86 (quoting *United States v. Dalm*, 494 U.S. 596, 601 (1990)). Some statutory limitations are found in 26 U.S.C. § 7422(a). *Id.* at 886; *Kaffenberger*, 314 F.3d  950–51 ("Congress limited that waiver by requiring a taxpayer to file an administrative claim with the Secretary of Treasury before bringing a lawsuit." (citing 26 U.S.C. § 7422(a)). Thus, compliance with § 7422(a) is required to establish the subject-matter jurisdiction of the Court over a tax refund claim. *Barse*, 957 F.3d at 885–86 (reviewing the existence of subject-matter jurisdiction based on whether sovereign immunity had been waived for a claim brought in compliance with § 7422(a)).

Section 7422(a) gives rise to the "variance doctrine." As the Eighth Circuit has explained,

> The variance doctrine prevents a taxpayer from appealing a refund denial on a different ground than asserted before the IRS. The doctrine derives from 26 U.S.C. § 7422(a), which prohibits any lawsuit "for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed with the Secretary or his delegate according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof." 26 U.S.C. § 7422(a); *see also Bohn v. United States*, 467 F.2d 1278, 1279 (8th Cir.1972). Therefore, "[a] ground for refund neither specifically raised by, nor included within the general language of, a timely claim for refund cannot be considered by a court in which a suit for refund is subsequently initiated." *First National Bank of Fayetteville v. United States*, 727 F.2d 741, 744 (8th Cir.1984).
>
> To avoid the variance doctrine, a taxpayer's administrative claim must be specific. Under United States Treasury regulations, a claim "must set forth in detail each ground upon which a credit or refund is claimed *and facts* sufficient to apprise the Commissioner of the exact basis thereof." 26 C.F.R. § 301.6402–2(b)(1) (emphasis added). "This regulation distinguishes between the ground for the claim—that is, the legal theory upon which the refund is claimed—*and facts* sufficient to apprise the Commissioner of the exact basis thereof." *Lockheed Martin v. United States*, 210 F.3d 1366, 1371 (Fed.Cir.2000) (citation omitted) (emphasis added).

*IA 80 Grp., Inc. & Subsidiaries v. United States*, 347 F.3d 1067, 1074 (8th Cir. 2003).

In *IA 80 Group*, the Eighth Circuit explained that a claim is "sufficiently specific" when

"the basic issue is evident from the record, and the IRS is aware of the nature of the claim." *Id.*

The Eighth Circuit then explained,

> However, this is not a stringent standard in light of the reasons for the rule. The variance rule serves to (1) "give adequate notice to the [IRS] of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination"; (2) "provide the [IRS] with an opportunity to correct any errors"; and (3) "limit the scope of any ensuing litigation to those issues which have been examined." *First National Bank of Fayetteville*, 727 F.2d at 744 (internal quotation marks and citation omitted); *Shanker v. United States*, 571 F.2d 8, 10 (8th Cir.1978) (citing *United States v. Felt & Tarrant Manufacturing Co.,* 283 U.S. 269, 272, 51 S.Ct. 376, 75 L.Ed. 1025 (1931)) ("The filing of a claim allows the IRS to investigate, make an administrative determination of the taxpayer's liability, and possibly avoid court action. The claim 'advise(s) the appropriate officials of the demands or claims intended to be asserted, so as to insure an orderly administration of the revenue.'")

24

*IA 80 Grp., Inc.*, 347 F.3d at 1074. The Eighth Circuit cautioned that the statement of the claim in administrative proceedings need not stand alone because the IRS relies on other information to determine the bases of the claim, such as other written communications to the IRS. *Id.* at 1075. The variance doctrine also does not apply where the IRS understood and considered the merits of a taxpayer's claim and stated as much in its letter of denial. *Id.*

The Court will begin its analysis of the application of the "variance doctrine" with Defendant's challenge to subject-matter jurisdiction over the penalties claim in Count IV.

2.      *The Court Lacks Subject-Matter Jurisdiction Over the Penalties Claim in Count IV*

Whether the Court has subject-matter jurisdiction over EVT's claim for refund and abatement of penalties in Count IV based on the variance doctrine is hotly contested. That does not mean that the question is a close one.

a.    The Parties' Arguments

Defendant argues that EVT did not challenge the penalties in its administrative claim to the IRS before bringing suit, which fails to comply with the strict statutory requirement that must be met to establish a waiver of sovereign immunity and permit the Court to exercise subject-matter jurisdiction. Filing 14 at 9. More specifically, Defendant argues that EVT did not follow the requirements of 26 U.S.C. § 7422 where its Form 8849 and other documents submitted to the IRS did not refer to the penalties for which EVT now seeks abatement. Filing 14 at 11 (citing Filing 1-2). Defendant argues further that EVT has provided no evidence that it disputed the penalties in an administrative claim, so that the IRS has not yet had the chance to review the penalty dispute and act on it, as required by statute. Filing 14 at 11. Furthermore, Defendant argues that 26 C.F.R. § 301.6402-2 requires EVT's claim to set forth "in detail" each ground upon which EVT seeks a credit or refund and the pertinent facts sufficient to apprise the IRS of

25

the basis for the claim. Filing 14 at 13. Thus, Defendant argues that EVT's failure to challenge or otherwise address the penalties assessed and failure to urge the "reasonable cause" defense to such penalties that EVT now relies on means that EVT's assertion of those challenges in these judicial proceedings violates the variance doctrine. Filing 14 at 14.

EVT argues that Defendant's Motion should be denied with respect to Count IV, because the request for penalty abatement is implicit within EVT's refund claim, and the Government considered EVT's reasonable cause penalty abatement theory when determining not to assert penalties before April 2022. Filing 18 at 4. EVT admits that it did not specifically raise its "reasonable cause" theory in the administrative refund claim, but EVT contends that it did not need to do so because the facts upon which its claim for penalty abatement is based are included in the refund claim. Filing 18 at 4. Here, EVT argues that its basis for penalty abatement—that is, EVT's contention that it exercised reasonable care because the customer held title to the glider kit and truck parts, a third-party fabricator assembled the functional truck, and the customer signed an acknowledgment stating it is liable for the excise tax—could be viewed as implicit in its administrative refund claim as well as during the audit. Filing 18 at 26. EVT argues that it is difficult to imagine a situation in which the IRS saw EVT's refund claim challenging the assessment of the excise tax but had no idea that EVT also disputed the assessed penalties based on failure to file the taxes. Filing 18 at 26. Moreover, EVT argues that Defendant waived the sufficient specificity requirement of the variance doctrine by waiting over two years from the end of the 2019 audit until April 11, 2022, to assess the penalties. Filing 18 at 26–27. EVT argues that because penalties must be assessed unless the failure to file was due to reasonable cause, the IRS's failure to assess penalties for two years was because the IRS determined that EVT had reasonable cause for its failure to file. Filing 18 at 27. EVT argues that the IRS's reversal of its

determination that EVT had reasonable cause was arbitrary, inexplicable, and unprincipled. Filing 18 at 28.

In reply, Defendant argues that EVT concedes that it did not raise the "reasonable cause" theory in its administrative refund claim, and Defendant contends that EVT did not mention penalties at all. Filing 21 at 7. Defendant argues that EVT did not give the IRS notice of the nature of its "reasonable cause" legal theory because EVT never mentioned it until filing suit. Filing 21 at 8. Defendant argues that any facts that would underly the "reasonable cause" legal theory are tangibly different from those raised in the refund claim before the IRS. Filing 21 at 8. Specifically, Defendant points out that EVT did not make an argument or allege facts in administrative proceedings that it had relied upon the IRS's prior examination, rulings, or other guidance, and EVT did not make any argument or allege any facts to show that EVT was harmed by a delay between when the claim for refund was submitted and when the notice of disallowance was issued. Filing 21 at 8. Defendant also argues that waiver does not apply because the excise taxes and penalties were both assessed on April 11, 2022. Filing 21 at 12. Thus, Defendant argues that the 2019 audit report is irrelevant to the timeliness of the penalty assessment. Filing 21 at 12. Defendant also contends that EVT's argument that the IRS must have determined that EVT had reasonable cause not to pay the excise taxes is a "fallacy" because the Internal Revenue Manual provision on which EVT relies stands only for the proposition that the IRS may consider not assessing penalties under certain circumstances. Filing 21 at 12.

      b.  The Variance Doctrine Bars EVT's Claim for Refund and Abatement of Penalties and Assertion of "Reasonable Cause"

EVT's administrative refund claim is devoid of any reference to penalties or a "reasonable cause" exception to penalties. Filing 1-2 at 6. Thus, EVT's claim for a refund and abatement of penalties in Count IV does not comply with 26 U.S.C. § 7422(a) because that claim

27

is "neither specifically raised by, nor included within the general language of, [EVT's] claim for a refund." *IA 80 Grp. Inc.*, 347 F.3d at 1074 (quoting *First Nat'l Bank of Fayetteville*, 727 F.2d at 744). Thus, EVT's purported reasonable cause defense cannot be considered by this Court in which EVT's suit for refund was subsequently initiated. *Id.* Nor does EVT's penalty refund claim or reasonable cause defense comply with 26 C.F.R. § 301.6402-2(b)(1), which "distinguishes between the ground for the claim—that is, the legal theory upon which the refund is claimed—*and facts* sufficient to apprise the Commissioner of the exact basis thereof." *Id.* (quoting *Lockheed Martin*, 210 F.3d at 1371 (emphasis added in *IA 80 Group*)). There is no hint of any facts in EVT's administrative claim sufficient to apprise the IRS that EVT would rely on reasonable cause as a defense to penalties when EVT never mentioned any facts related to reasonable cause—indeed, the administrative refund claim does not discuss EVT's purported reliance on the IRS's prior examination, rulings, or other guidance. Filing 1-2 at 6. Thus, even though the "sufficiently specific" standard is "not a stringent standard," *IA 80 Grp., Inc.*, 347 F.3d at 1074, EVT has shown nothing that would satisfy that standard as to refund or abatement of penalties or a reasonable cause defense related to penalties.

EVT's waiver argument is also unavailing. That argument is premised on the notion that the IRS must have considered and decided not to impose penalties from the date of the 2019, examination report until April 2022. Filing 18 at 26–27. That argument puts the cart before the horse. The IRS assessed all taxes, interest, and penalties due against EVT in April 2022. Filing 21 at 12; Filing 1 at 8 (¶ 38) (alleging that "the IRS erroneously assessed Excise Taxes on April 1, 2022, and May 9, 2022, for each of the fifteen periods from the quarter that ended March 31, 2016, through the quarter that ended September 30, 2019"), 19 (¶ 89) ("On or about April 11, 2022, the IRS issued a CPP220 Notice for the failure to pay penalties and interest for the Tax

Period."); Filing 20-4 (notice of failure to pay penalties and interest). There would have been no basis for the IRS to impose penalties or to consider not imposing penalties until the IRS had assessed excise taxes. There was no waiver from a delay in assessment of penalties where those penalties were assessed with the taxes.

Under these circumstances, the variance doctrine bars EVT's assertion of a claim for refund or abatement of penalties or a "reasonable cause" defense related to penalties in Count IV.

3.  *The Court Has Subject-Matter Jurisdiction Over the "Safe Harbor" Defense in Count II*

Whether the Court has subject-matter jurisdiction over EVT's "alternative" and "hypothetical" "safe harbor" defense to the excise taxes assessed in Count II—based on whether or not the claim was properly presented in EVT's refund claim to the IRS or is asserted only now in violation of the variance doctrine—is also hotly contested. However, the result for this claim is different than the result for the "penalties" claim in Count IV.

a.  The Parties' Arguments

Defendant argues that EVT never raised the "safe harbor" defense to the excise taxes on which it now relies in its administrative claim, so that asserting that defense now violates the variance doctrine. Filing 14 at 16. Specifically, Defendant argues that EVT never raised before the IRS the "alternative and hypothetical" argument based on the safe harbor that is the basis for EVT's Count II. Filing 14 at 17. Indeed, Defendant points out that EVT specifically maintained to the IRS in its administrative claim that the safe harbor provision does not apply to EVT. Filing 14 at 17 (citing Filing 1-2 at 6). Defendant argues that EVT cannot now shift to a totally different ground in its judicial action for a refund of taxes. Filing 14 at 17.

EVT argues that it asserted in its administrative claim that the safe harbor applies to this "transaction," citing Filing 1-2 at 6, just as Defendant did for the contrary proposition. Filing 18

at 3. EVT describes this part of its administrative claim as acknowledging that the safe harbor provision in 26 U.S.C. § 4052(f)(1) would not apply to EVT because it is not the manufacturer but arguing that the safe harbor would apply to EVT's customer as the manufacturer of the functional truck. Filing 18 at 3; Filing 18 at 8. Thus, EVT argues that the IRS had adequate notice of EVT's safe harbor claim as an alternative contention from the face of EVT's refund claim. Filing 18 at 4. In other words, EVT argues that the variance doctrine does not apply to the safe harbor defense raised in Count II because EVT's claim for refund was sufficiently specific by itself to provide adequate notice to the IRS of EVT's safe harbor defense. Filing 18 at 6. Even if the refund claim was not enough, EVT argues that the IRS was aware of the nature of the safe harbor claim from the administrative record, citing the IRS's conclusion that the safe harbor does not apply in its December 4, 2019, examination report showing proposed changes to EVT's excise tax for the Tax Period. Filing 18 at 4 (citing Filing 20-2 at 4–35); Filing 18 at 9–10. EVT argues that "any contention the Government had no idea the Safe Harbor was at issue is disingenuous and perhaps approaches bad faith." Filing 18 at 10; Filing 18 at 11 ("The Government's assertion of lack of notice that the Safe Harbor claim was at issue is absurd."). Finally, EVT argues that the IRS has waived the application of the variance doctrine by considering the applicability of the safe harbor defense to EVT. Filing 18 at 10.

In reply, Defendant argues that EVT "was neither silent nor general in its description of the application of the [safe harbor] exception: it unambiguously raised the exact opposite legal theory before the IRS – that '[t]he safe harbor provision in Section 4052(f)(1) *does not apply to Taxpayer*.'" Filing 21 at 2 (citing Filing 1-2 at 6, with emphasis added by Defendant). In Defendant's words, "Elkhorn Valley didn't just fail to make the legal argument; it firmly planted a signpost pointing in the wrong direction." Filing 21 at 5. Defendant also disputes EVT's

contention that the safe harbor defense applied to the "transaction" because EVT specifically argued that the safe harbor defense applied only to its customers. Filing 21 at 7. Defendant argues that whether or not the factual basis for the safe harbor defense was raised when the IRS impliedly raised the issue of the defense, EVT did not raise the legal theory until EVT filed this lawsuit. Filing 21 at 4. Defendant also argues that it did not waive the variance doctrine as to the safe harbor argument because the document purportedly containing the "pages of analysis" by the IRS of the safe harbor issue was sent to EVT on December 4, 2019, in the examination report prior to EVT filing its administrative refund claim with the IRS on October 10, 2022. Filing 21 at 10. Defendant states that it never considered the safe harbor issue in consideration of EVT's refund claim. Filing 21 at 10.

> b. The Variance Doctrine Does Not Bar EVT's "Safe Harbor" Defense

EVT asserts an argument "in the alternative" that it is entitled to relief from the excise taxes due to the "safe harbor" provision of Section 4052(f)(1). EVT claims it should be able to proceed with this "alternative" safe harbor defense even though it took the position in its administrative claim that its customers, not EVT, are entitled to "safe harbor" relief:

> 2.     The safe harbor provision in Section 4052(f)(1) does not apply to Taxpayer. The focus of any application of Section 405[2](f) must be to a semi-tractor unit that was previously taxed. Thus, because the assembling of the semi-tractor units by Taxpayer's customer, the purview of Rev. Rul. 91-27 applies to Taxpayer's customers.

Filing 1-2 at 6.

In its administrative claim, EVT could and should have argued "in the alternative" that if it was the manufacturer, the safe harbor would apply to it so that the argument was "specifically raised by . . . a timely claim for refund." *See IA 80 Grp., Inc.*, 347 F.3d at 1074 (quoting *First Nat'l Bank of Fayetteville*, 727 F.2d at 744). The question that this Court now faces is whether

EVT's counsel's failure to use the "in the alternative" language in its administrative claim causes EVT to waive the defense under the variance doctrine.

As the Eighth Circuit made clear, the administrative claim need not stand alone because the IRS relies on other information to determine the bases of the administrative claim, including other written communications to the IRS. *Id.* at 1075. The IRS's March 11, 2024, notice of disallowance of EVT's refund claim, Filing 1-3, makes clear that EVT's administrative claim, Filing 1-2, was not the only information that the IRS considered. In pertinent part, the IRS's three-sentence Notice, which was the only response provided to EVT's one-page administrative claim, states the following:

### NO CONSIDERATION

> We are sorry but we cannot consider your request for audit reconsideration, received on Oct. 20, 2022. It does not appear that you have provided any additional information that has not been considered previously. Therefore, we are denying your claim for refund.

Filing 1-3 at 6. One source of information "considered previously" was the 2019 tax examination report, which addressed EVT's arguments concerning applicability of the excise taxes. *See* Filing 20-2 at 4–35. That report is a document embraced by the Complaint. *See* Filing 1 at 8 (¶¶ 37–38) (allegations about the examination and its conclusions); *see also Rossi*, 60 F.4th at 1193 (explaining that on a "facial" challenge, the Court "can consider documents 'necessarily embraced by the complaint,' including 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.'" (quoting *Zean*, 858 F.3d at 526)). Thus, contrary to Defendant's contention, the 2019 tax examination report is not irrelevant.

The 2019 tax examination report recognizes EVT's argument about whether the 26 U.S.C. § 4052(f)(1) safe harbor is applicable to EVT as follows:

> The taxpayer's argument appears to suggest that if they have a previously taxed tractor (donor unit), [they] don't necessarily have to repair or modify that particular article to extend its useful life. According to the taxpayer [they] can permanently strip the old truck tractor of all its form, all its identity, and all its utility as a vehicular structure and entity and combine certain salvage components with a rolling or power glider and [they]'ve restored and extended the life of the previously taxed article. This argument is misplaced and is against the statutory intent of section 4052(f)(1).

Filing 20-2 at 30. The 2019 tax examination report also recognizes that EVT "relies in part on Revenue Ruling 91-27 to support its position." Filing 20-2 at 30. After detailed analysis that is not relevant here—but certainly will be in subsequent proceedings, if the Court reaches the merits of the "safe harbor" defense—the IRS concluded in the 2019 tax examination report as follows:

> The 75% safe harbor rule of § 4052(f)(1) does not apply to the taxpayer's manufactured tractors. The taxpayer has manufactured and is considered the manufacturer of tractors which are articles taxable under§ 4051(a)(1), and subject to the four percent markup percentage of § 4052(b)(4)(ii).

Filing 20-2 at 35.

Thus, the variance doctrine does not bar consideration of EVT's "safe harbor" defense in Count II because "the basic issue is evident from the record, and the IRS [wa]s aware of the nature of the claim." *IA 80 Grp., Inc.*, 347 F.3d at 1074. Just as importantly, the 2019 tax examination report demonstrates that the IRS was aware of both the "legal theory upon which the refund [wa]s claimed—*and facts* sufficient to apprise the Commissioner of the exact basis thereof." *Id.* (quoting *Lockheed* Martin, 210 F.3d at 1371 (with emphasis added in *IA 80 Group*)). To put it another way, the IRS understood and considered the merits of EVT's claim and stated as much in its 2019 tax examination report. *See id.* at 1075. The IRS then incorporated the 2019 tax examination report into its notice rejecting EVT's request for audit reconsideration by stating that EVT had not "provided any additional information that has not been considered

previously." Filing 1-3 at 6. Under these circumstances, the variance doctrine does not bar EVT's assertion of a "safe harbor" defense in Count II.

Further, the Court cannot help but to be troubled by the IRS's position on these issues in this case. The IRS agrees it allowed EVT to not pay excise taxes in 2014, which EVT relied on in not paying the excise tax from 2016 through 2019. Of course, in making claims for the excise tax to be paid for the 2016–2019 tax years, the IRS took the opposite position that it did in 2014. Then, in 2019, the IRS wrote a 34-page document directly considering and rejecting EVT's contention that if it was the "manufacturer" of the semi-trucks then it should be entitled to the safe harbor under Section 4052(f)(1) and not have to pay the excise tax. After all that, the IRS now claims that EVT waived the "safe harbor" issue by not including the "in the alternative" words it in its one-page administrative claim.

In other words, the IRS can change its mind, argue inconsistently, conduct sloppy administration, and then claim waiver when a taxpayer fails to include a few words in a one-page administrative claim—on an issue on which the IRS previously issued a 34-page opinion. The Court concludes the variance doctrine does not support this sort of "gotcha" litigation.

### 4.    Summary

Even affording EVT the protections or safeguards of Rule 12(b)(6), *Smith*, 106 F.4th at 813, EVT has failed to plead a sufficient basis for subject-matter jurisdiction over its claim for refund and abatement of penalties in Count IV because that claim violates the variance doctrine. *See Hilger*, 87 F.4th at 899. EVT's claim for refund and abatement of penalties in Count IV is dismissed for lack of subject-matter jurisdiction. In contrast, the variance doctrine does not bar EVT's "safe harbor" defense in Count II, because that defense was adequately raised in the administrative proceedings, and this case will proceed on Count II.

## III. THE CHALLENGES BASED ON FAILURE TO STATE CLAIMS

Defendant argues that EVT's estoppel claim in Count III should be dismissed under Federal Rule of Civil Procedure 12(b)(6), because the Complaint has not alleged sufficient facts to establish an estoppel claim. Filing 14 at 3. Defendant also asserts, in the alternative, that Counts III and IV should be dismissed under Federal Rule of Civil Procedure 12(b)(6), because the complaint has not alleged sufficient facts to state a refund claim. Filing 14 at 3. However, Defendant makes no argument in support of that alternative Rule 12(b)(6) ground for dismissal anywhere in its supporting brief. *See generally* Filing 14. Consequently, Defendant has waived challenges to Counts III and IV based on failure to state refund claims. *See United States v. Cooper*, 990 F.3d 576, 583 (8th Cir. 2021) ("Ordinarily, a party's failure to make an argument in its opening brief results in waiver of that argument."); *Montin v. Moore*, 846 F.3d 289, 295 (8th Cir. 2017) ("Because [c]laims not raised in an opening brief are deemed waived, and [appellant] failed to address the . . . claim in his opening brief, [appellant] waived this issue." (cleaned up)).

The Court has already determined that it lacks subject-matter jurisdiction over Count IV, so that Count is dismissed on that ground. Although the Court has already concluded that it lacks subject-matter jurisdiction over Count III to the extent that it seeks abatement of taxes, the focus of Defendant's Rule 12(b)(6) challenge to Count III as Defendant extensively briefed the argument is failure to state a claim of equitable estoppel. Before considering that argument, the Court will summarize the standards for dismissal pursuant to Rule 12(b)(6).

### A. Rule 12(b)(6) Standards

Federal Rule of Civil Procedure 12(b)(6) provides for a pre-answer motion for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion, a court is not strictly limited to consideration of the complaint. Instead,

"[c]ourts may [also] consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022) (internal quotation marks and citations omitted); *LeMay v. Mays*, 18 F.4th 283, 289 (8th Cir. 2021) (explaining that the court may consider documents necessarily embraced by the pleadings). However, the Court cannot consider factual allegations that were not included in the Complaint or in materials embraced by the pleadings. *See Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) ("While [the plaintiff] presented additional facts in his oppositions to the motion to dismiss[,] . . . those factual allegations were not included in his amended complaint and, thus, cannot be considered on a motion to dismiss.").

The typical ground for a Rule 12(b)(6) motion is the insufficiency of the factual allegations offered to state claims. To state a claim, a complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, "'threadbare recitals of the elements of a cause of action' cannot survive a [Rule 12(b)(6)] motion to dismiss." *Du Bois v. Bd. of Regents of Univ. of Minnesota*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, as the Eighth Circuit Court of Appeals has explained, "A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680-83). To put it another way, a court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon,*

*Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). Thus, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (quoting Iqbal, 556 U.S. at 678). In contrast, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* (internal quotation marks and citations omitted). The Eighth Circuit Court of Appeals has cautioned that "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden, 588 F.3d at 594*.

In ruling on a Rule 12(b)(6) motion, a court must "accept 'the facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'" *Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., In*c., 4 F.4th 620, 622 (8th Cir. 2021)). On the other hand, "[m]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). A court also need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021).

Rule 12(b)(6) also permits dismissal when a claim is not cognizable under applicable law. *See, e.g., Couzens v. Donohue*, 854 F.3d 508, 517 (8th Cir. 2017) (holding dismissal was appropriate where Missouri did not recognize a claim for false light invasion of privacy); *Thomas v. Bd. of Regents of Univ. of Nebraska*, No. 4:20CV3081, 2022 WL 1491102, at *18 (D. Neb. May 11, 2022) (agreeing with defendant that the plaintiffs had failed to state a claim,

because a disparate-impact claim is not cognizable under the Equal Protection Clause); *Freeney v. Galvin*, No. 8:19CV557, 2020 WL 229996, at *2 (D. Neb. Jan. 15, 2020) (finding the plaintiff failed to state a § 1983 claim against the manager of his private place of employment because such a claim is not cognizable where a private person is not a state actor or engaged in joint action with the state or its agents). In such cases, the plaintiff failed to state a claim that was legally cognizable as opposed to factually plausible.

The Court will apply these standards in its consideration of Count III of EVT's Complaint.

### B. EVT's Estoppel Claim in Count III

*1.    EVT's Allegations in Support of Its Estoppel Claim*

EVT asserts that its allegations in Filing 1 at 16–18 (¶¶ 71–86) in support of its estoppel claim in Count III are sufficient to state a claim. The Court will now set out those specific allegations:

71.    Elkhorn Valley incorporates the allegations in the foregoing paragraphs as if fully set forth herein.

72.    Estoppel is a judicial equitable doctrine that will be invoked to avoid injustice and an unfair result where a taxpayer has relied to its detriment on IRS actions and representations.

73.    The IRS rulings and other guidance explicitly, and consistently, said that the party who owns and controls the component parts is the manufacturer and ultimately the party responsible for payment of Excise Taxes.

74.    The definition of manufacturer has not changed during the time period at issue.

75.    The IRS did not revoke or modify those prior rulings and other published guidance that contradict its new position.

76.    The IRS examined Elkhorn Valley for tax periods ending in 2014 and the IRS determined that Elkhorn Valley was not responsible for Federal Excise Taxes ("First IRS Audit").

77. Subsequently, the IRS attempted to collect and collected Excise Taxes from customers of Elkhorn Valley because the customer is the manufacturer of the completed truck responsible for Excise Taxes.

78. Elkhorn Valley's business model and process has not changed since the First IRS Audit.

79. In an attempt to minimize the costs and efforts associated with collecting Excise Taxes from the customers of Elkhorn Valley, the IRS has decided to reverse its initial position. Consequently, the IRS is now demanding that Elkhorn Valley fulfill the responsibilities of the IRS in order to relieve the IRS from undertaking the task of collecting the tax from the customers.

80. The IRS induced reliance from Elkhorn Valley and then reversed its position.

81. Elkhorn Valley is one of many businesses in the glider industry that have been targeted by the IRS.

82. Elkhorn Valley reasonably relied to its detriment on results from the First IRS Audit, IRS rulings, other published guidance, and the efforts of the IRS to collect Excise Tax from its customers.

83. Elkhorn Valley now faces tax assessments totaling $5,467,469.38 for periods spanning just four years.

84. The IRS assessments for the Tax Periods at issue represent amounts that Elkhorn Valley never charged to its customers because it reasonably believed (and was induced to believe) that Elkhorn Valley was not responsible for Excise Taxes.

85. Elkhorn Valley cannot now collect from its customers the Excise Taxes the IRS claims are owed on sales occurring between four and seven years ago.

86. Under the circumstances, requiring Elkhorn Valley to pay almost $5.5 million in Excise Taxes would cause Elkhorn Valley to suffer an unconscionable injury and undue hardship.

Filing 1 at 16–18 (¶¶ 71–86).

1. *The Parties' Arguments*

Defendant argues that EVT's estoppel claim in Count III is both legally unsound and insufficiently pleaded. Filing 14 at 5. Defendant argues that there is considerable doubt that estoppel applies to the type of claim EVT asserts against the United States. Filing 14 at 7. As to

pleading of such a claim, Defendant argues that how the IRS treats one taxable period does not control how it treats a later period, and that a mistake by the IRS in one year does not prevent the IRS from subsequently correcting that mistake in another year. Filing 14 at 6. Accordingly, Defendant argues, taxpayers like EVT cannot rely on the results of a prior audit to estop the IRS from a different determination of excise taxes on similar items in subsequent tax years. Filing 14 at 6. For the same reason, Defendant argues that a taxpayer cannot detrimentally rely on the IRS's prior treatment of the taxpayer or others. Filing 14 at 6. Furthermore, Defendant argues that EVT has not pleaded sufficient facts to meet the heightened standard that would support estoppel against the government. Filing 14 at 7. Specifically, Defendant asserts that estoppel against the government requires a showing of "extreme circumstances," on which the plaintiff bears a heavy burden to show affirmative misconduct. Filing 14 at 7. Defendant argues that EVT's Complaint does not allege facts sufficient to establish extreme circumstances or affirmative misconduct. Filing 14 at 8. Defendant contends that instead EVT alleges only that the IRS was inconsistent in how it treated EVT's sales of glider kits and truck parts for purposes of excise taxes in different tax periods. Filing 14 at 8.

EVT counters that equitable estoppel claims against the government are not barred. Filing 18 at 13. More importantly, EVT argues that it has adequately pleaded the elements of estoppel and that Defendant's "mistake of law" defense does not apply. Filing 18 at 13. EVT argues that it has alleged in its Complaint more than mere negligence or mistake and has instead alleged facts from which a reasonable inference of intentional misconduct can be drawn. Filing 18 at 17 (citing Filing 1 at 16–18 (¶¶ 73–86)); *see also* Filing 18 at 4 (citing Filing 1 at 16–18 (¶¶ 71–81)). Contrary to Defendant's contentions that EVT relied on the IRS's correction of a mistake of law, EVT argues that it alleges that the IRS was correct when it found no excise taxes were due

40

after the first examination, but then the IRS erred after the second examination by assessing such taxes. Filing 18 at 17–18. EVT argues that it alleged that the IRS changed its position in secret and in contradiction to its published regulations and guidance without revoking or modifying that guidance and those regulations. Filing 18 at 18. EVT argues that it has alleged that its business model had complied with the prior regulations and guidance, but that EVT could not comply with the IRS's secret new position. Filing 18 at 18. EVT also contends that it has alleged misconduct in the form of the IRS asserting that EVT was the manufacturer responsible for excise taxes while attempting to collect and collecting excise taxes from EVT's customers. Filing 18 at 18. EVT also argues that Defendant's arguments that each taxable year stands alone and that mistakes of law may be corrected in subsequent years are premature and fail to address other grounds for estoppel. Filing 18 at 18–19. EVT contends that unlike the taxpayers in the cases cited by Defendant, EVT has not conceded that its claim for a refund, deduction, or exemption was contrary to applicable statutes, regulations, and rulings because EVT contends its claims are consistent with applicable statutes, regulations, and rulings. Filing 18 at 19.

In reply, Defendant reiterates that EVT has not alleged affirmative misconduct or extreme circumstances where there are no factual allegations that any conduct by the IRS was either designed to mislead EVT or made it unmistakably likely that EVT would be misled. Filing 21 at 3. Defendant reiterates that the IRS taking a different position in different tax periods is not evidence of affirmative misconduct and that reliance on a prior position by the IRS is irrelevant because each tax year is treated independently for tax purposes. Filing 21 at 3; *see also* Filing 21 at 14–15. Defendant argues that even targeting tax enforcement on a certain industry cannot be construed as affirmative misconduct or a taxpayer could argue that the IRS's investigation of unlawful conduct such as tax shelters is affirmative misconduct. Filing 21 at 16. The Defendant's

41

bottom line is that different treatment in different tax years is not affirmative misconduct. Filing 21 at 17.

2.    *Estoppel Standards*

The Eighth Circuit Court of Appeals has addressed the question of whether the government can be equitably estopped in *Bartlett v. U.S. Dep't of Agric.*, 716 F.3d 464 (8th Cir. 2013). In *Bartlett*, the Eighth Circuit explained,

> To be sure, the Supreme Court and this circuit have warned that courts should be cautious when evaluating estoppel claims against the government. *See Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) ("Courts of Appeals have taken our statements as an invitation to search for an appropriate case in which to apply estoppel against the Government, yet we have reversed every finding of estoppel that we have reviewed."); *see also Harding Cnty., S.D. v. Frithiof*, 575 F.3d 767, 777 (8th Cir.2009) ("[E]stoppel should be used sparingly against the public entities."). Further, "equitable estoppel will not lie against the Government as it lies against private litigants." *Richmond*, 496 U.S. at 419, 110 S.Ct. 2465. At the same time, however, neither "the Supreme Court [n]or this court [has] accepted the position ... that the government may not be estopped as a matter of law." *Wang v. Att'y Gen.*, 823 F.2d 1273, 1276 (8th Cir.1987).

*Bartlett v. U.S. Dep't of Agric.*, 716 F.3d 464, 475 (8th Cir. 2013). In light of the decision in *Bartlett*, this Court will give no further consideration to whether or not the government can be estopped; instead, the Court will consider the circumstances in which the government can be equitably estopped.

The traditional elements of equitable estoppel are the following: "(1) a 'false representation by the government;' (2) government intent to induce the claimant to act on the misrepresentation; (3) a lack of knowledge or inability to obtain true facts on the part of the claimant; and (4) the claimant's 'reliance on the misrepresentation to his detriment.'" *Bartlett*, 716 F.3d at 475–76 (quoting *Rutten v. United States*, 299 F.3d 993, 995 (8th Cir. 2002)). However, as noted by the Supreme Court and the Eighth Circuit Court of Appeals, "equitable estoppel will not lie against the Government as it lies against private litigants." *Bartlett*, 716 F.3d

at 475 (quoting *Richmond*, 496 U.S. at 419). Specifically, as the Eighth Circuit Court of Appeals

has explained,

> In addition to proving the traditional elements of estoppel, a plaintiff bringing an equitable-estoppel claim against the government must prove that the government engaged in affirmative misconduct. *Bartlett v. U.S. Dep't of Agric.*, 716 F.3d 464, 475-76 (8th Cir. 2013). This is a "heavy burden" that requires showing "more than mere negligence." *Id.* at 475; *cf. Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) ("Courts of Appeals have taken our statements as an invitation to search for an appropriate case in which to apply estoppel against the Government, yet we have reversed every finding of estoppel that we have reviewed."). Even "negligence and possible bad faith" is insufficient to establish affirmative misconduct in the absence of evidence that the government intended to mislead the plaintiff. *See Morgan v. Comm'r*, 345 F.3d 563, 567 (8th Cir. 2003).

*Bruning v. City of Omaha, Nebraska*, 6 F.4th 821, 827 (8th Cir. 2021); *see also Bartlett*, 716

F.3d at 475–76 (explaining that "[i]f a claimant satisfies the affirmative misconduct requirement,

he then must prove the four traditional elements of estoppel. . . ."). The Eighth Circuit explained

in *Bartlett* why estoppel of the government requires this heightened standard:

> Through this affirmative misconduct requirement, "[t]he Supreme Court has imposed a more stringent standard for estopping the government because there is a strong public interest in upholding the rule of law, even where hardship may result to individuals in particular cases." *Wang*, 823 F.2d at 1276.

*Bartlett*, 716 F.3d at 475.

The application of the "affirmative misconduct" element in *Bruning* is instructive, even

though *Bruning* was a decision on appeal of a summary judgment:

> The Brunings did not present sufficient evidence of affirmative misconduct to withstand summary judgment on their equitable-estoppel claim. They point to eight allegedly false statements made by Omaha officials, including statements that assured the Brunings that they were in compliance with Omaha's zoning regulations, statements that implied that Omaha would be willing to compromise, and a misstatement about when the Zoning Board of Appeals was to consider the dispute. None of these statements suggests an intent to mislead. At most, assuming the statements were made and were false, they reflect negligence and raise a speculative possibility of bad faith. Thus, even if all genuine factual disputes are resolved in their favor, the Brunings have failed to prove affirmative misconduct. *See [Morgan*, 345 F.3d] at 565-67 (holding that a false assurance that

the plaintiff's tax liability would be abated and a failure to respond to the plaintiff's inquiries did not constitute affirmative misconduct); *Clason v. Johanns*, 438 F.3d 868, 870, 872 (8th Cir. 2006) (holding that a false assurance by a government official that the government would treat the plaintiff as in compliance with a legal requirement did not constitute affirmative misconduct). Accordingly, the district court properly granted summary judgment for Omaha on the Brunings' equitable-estoppel claim.

*Bruning*, 6 F.4th at 827.

### 3.    *EVT Does Not Sufficiently Plead Affirmative Misconduct*

The Court concludes that a dispositive issue as to Count III—and the only one that the Court need consider here—is the insufficiency of EVT's pleading that the IRS engaged in affirmative misconduct as required to allege an equitable estoppel claim against the government. *See Bruning*, 6 F.4th at 827 (identifying this element as distinguishing a claim of equitable estoppel against the government from a "traditional" estoppel claim); *Bartlett*, 716 F.3d at 475–76 (same). Indeed, only if EVT has adequately pleaded this element of its estoppel claim against the government would there be any need to consider the pleading of the four traditional elements of estoppel. *Bartlett*, 716 F.3d at 475–476 (explaining that "[i]f a claimant satisfies the affirmative misconduct requirement, he then must prove the four traditional elements of estoppel. . . .").

Unlike the situation in *Bruning*, where the claimant pointed to eight allegedly false statements by the government officials, *see* 6 F.4th at 827, not one of the allegations on which EVT relies states or suggests that the IRS made any false statement, *see* Filing 1 at 16–18 (¶¶ 71–86). At most, EVT alleges that the IRS made correct statements about EVT's non-liability for excise taxes in the first examination, but then "reversed its initial position" after the second examination. Filing 1 at 17 (¶ 79). EVT does not allege that the IRS falsely stated a determination that excise taxes would not be imposed for the first examination period. Filing 1 at 16–17 (¶¶ 73–76). A reversal of the IRS's position in the second examination is not a fact that

plausibly suggests that the IRS made false statements in the first examination or that the IRS intended to mislead EVT. *See Christopherson*, 33 F.4th at 499 (stating the plausibility standard); *Bruning*, 6 F.4th at 827 (concluding that the allegedly false statements did not suggest an intent to mislead). The lack of any such plausible inference of falsity and intent to mislead from the change in position is confirmed as a matter of law by the principle that tax treatment by the IRS in one period does not preclude different tax treatment by the IRS in a subsequent year. *Hawkins v. Comm'r*, 713 F.2d 347, 351–52 (8th Cir. 1983) ("[I]t is settled that even if the Commissioner erroneously may have accepted the tax treatment of certain items in previous years, he is not precluded from correcting that error in a subsequent year." (citing *Harrah's Club v. United States*, 661 F.2d 203, 205 (Ct. Cl. 1981), and *Union Equity Cooperative Exchange v. Commissioner*, 481 F.2d 812, 817 (10th Cir.), *cert. denied*, 414 U.S. 1028 (1973))). This principle also makes clear that it makes no difference whether the taxpayer asserts that the prior tax treatment or the subsequent tax treatment was the incorrect one; the IRS is free to determine that the prior tax treatment was in error and subsequently correct it, and no inference of falsity, intent to mislead, or affirmative misconduct arises from that circumstance. As in *Bruning*, the change in treatment reflects at most negligence and—perhaps—a speculative inference of bad faith, but that is not enough to plausibly plead affirmative misconduct. 6 F.4th at 827.

Furthermore, the other allegations in support of EVT's equitable estoppel claim are conclusory, speculative, and devoid of supporting facts, so that they are insufficient to generate a plausible inference of affirmative misconduct. *See Mitchell*, 28 F.4th at 895 (explaining that to state a claim requires nonconclusory allegations); *Richardson*, 2 F.4th at 1068 ("Mere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable."

(internal quotation marks and citations omitted)); *see also Knowles*, 2 F.4th at 755 (explaining that a court need not accept a pleader's "legal conclusions drawn from the facts").

Specifically, to plead affirmative misconduct, EVT relies on allegations that the IRS "did not revoke or modify" its prior rulings and other published guidance that "said that the party who owns and controls the component parts is the manufacturer and ultimately the party responsible for payment of Excise Taxes" and that EVT alleges "contradict its new position." Filing 1 at 16 (¶ 75). The allegation that the conclusion in the second examination "contradicts" the prior rulings and other published guidance is a legal conclusion drawn from the fact of different treatment that the Court is not required to accept. *See Knowles*, 2 F.4th at 755. Again, the change in treatment does not give rise to a plausible inference of affirmative misconduct because the IRS's tax treatment in one period does not preclude a different tax treatment in a subsequent period under the same statues, regulations, and published guidance. *Hawkins v. Comm'r*, 713 F.2d at 351–52. Similarly, the allegation that the IRS attempted to collect and collected excise tax from EVT's customers because the customers were the manufacturers of the trucks, Filing 1 at 17 (¶ 77), likewise does not give rise to an inference of affirmative misconduct because the IRS's determination of who is required to pay the excise tax in one period does not preclude a different determination in a subsequent period. *Id.*

Next, EVT relies on the following allegation in its Complaint:

> 79.    In an attempt to minimize the costs and efforts associated with collecting Excise Taxes from the customers of Elkhorn Valley, the IRS has decided to reverse its initial position. Consequently, the IRS is now demanding that Elkhorn Valley fulfill the responsibilities of the IRS in order to relieve the IRS from undertaking the task of collecting the tax from the customers.

Filing 1 at 17 (¶ 79). EVT has cited no facts plausibly suggesting that the IRS reversed its initial position in an attempt to minimize the costs and efforts associated with collecting excise taxes from EVT's customers, or that the change was in order to relieve the IRS from undertaking the

task of collecting the tax from the customers, rather than because the IRS had concluded that the prior determination was in error or that the evidence from the second examination required a different conclusion. This paragraph is no more than speculation insufficient to state a claim. *See Richardson*, 2 F.4th at 1068 ("Mere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." (internal quotation marks and citation omitted)). Finally, no inference of affirmative misconduct arises from the allegation that the IRS "targeted" businesses in the glider industry. Filing 1 at 17 (¶ 81). One would reasonably expect the IRS to "target" what it believes are failures to pay taxes by certain businesses with products or practices in common. Nothing about such "targeting" or any of EVT's other allegations plausibly suggests that the IRS "targeted" EVT or businesses in the glider industry for an improper reason.

In short, the Court finds no allegations plausibly suggesting affirmative misconduct by the IRS as required to plead equitable estoppel against the government. *See Bruning*, 6 F.4th at 827. Consequently, EVT's estoppel claim in Count III fails to state a claim on which relief can be granted. *See Mitchell*, 28 F.4th at 895 (explaining that to survive a Rule 12(b)(6) dismissal, the complaint must plausibly plead a basis for the defendant's liability). Count III is dismissed on this ground as well as on the ground of lack of subject-matter jurisdiction over the claim to the extent that it seeks abatement of excise taxes.

## IV. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Defendant's Motion to Dismiss Counts II, III, and IV of EVT's Complaint and the part of Count I that seeks abatement of unpaid taxes, interest, and penalties, Filing 13, is granted as follows:

1.    The Motion is granted as to EVT's claims for abatement of taxes and penalties in Counts I, II, III, and IV, and the claim for refund of penalties in Count IV for lack of subject-matter jurisdiction; and

2.    the Motion is granted as to EVT's equitable estoppel claim in Count III for failure to state a claim on which relief can be granted.

Defendant's Motion is denied as to the "safe harbor" defense in Count II.

Consequently, this case shall proceed only on EVT's refund claim in Count I, but not on any part of Count I that seeks an abatement of unpaid taxes, penalties, and interest, and on EVT's "safe harbor" defense in Count II.

Dated this 1st day of May, 2025.

BY THE COURT:

Brian C. Buescher
United States District Judge